[If you need additional space for ANY section, please attach an additional sheet and reference that section.]





**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FILED

DEC 01 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| Jonathan Mensah _____ <br><br> _____, <br><br> **Plaintiff(s),** <br><br> vs. <br><br> S&S Activewear LLC _____ <br><br> _____, <br><br> **Defendant(s).** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> **Case No.** <br><br> **Case 1:25-cv-14554** <br> **Judge Lindsay C. Jenkins** <br> **Magistrate Judge M. David Weisman** <br> **Random/Cat. 3** |

**COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS**

*This form complaint is designed to help you, as a* pro se *plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.*

1.  This is a claim for violation of plaintiff's civil rights as protected by the Constitution and

    laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986.

2.  The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

3.  Plaintiff's full name is  Jonathan Mensah _____.

*If there are additional plaintiffs, fill in the above information as to the first-named plaintiff and complete the information for each additional plaintiff on an extra sheet.*

1

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

4.　　　Defendant, __S&S Activewear LLC__ , is
　　　　　　　　　　　　　　(name, badge number if known)

☐ an officer or official employed by _____ ;
　　　　　　　　　　　　　　　(department or agency of government)

_____ or

☑ an individual not employed by a governmental entity.

*If there are additional defendants, fill in the above information as to the first-named defendant and complete the information for each additional defendant on an extra sheet.*

5.　　　The municipality, township or county under whose authority defendant officer or official

acted is __Will County__ . As to plaintiff's federal

constitutional claims, the municipality, township or county is a defendant only if

custom or policy allegations are made at paragraph 7 below.

6.　　　On or about __8/10/2023__ , at approximately _____ ☐ a.m. ☑ p.m.
　　　　　　　　　　(month, day, year)

plaintiff was present in the municipality (or unincorporated area) of __Lockport__

__IL__ , in the County of __Will__ ,

State of Illinois, at __16427 W Prologis Parkway Lockport IL__ ,
　　　　　　　　　　　(identify location as precisely as possible)

when defendant violated plaintiff's civil rights as follows *(Place X in each box that applies)*:

☐　　arrested or seized plaintiff without probable cause to believe that plaintiff had committed, was committing or was about to commit a crime;

☐　　searched plaintiff or his property without a warrant and without reasonable cause;

☐　　used excessive force upon plaintiff;

☐　　failed to intervene to protect plaintiff from violation of plaintiff's civil rights by one or more other defendants;

☐　　failed to provide plaintiff with needed medical care;

☐　　conspired together to violate one or more of plaintiff's civil rights;

☑　　Other: __Plaintiff was fired after reporting a racially__
__offensive comment and was terminated the same day in__
__retaliation__

2

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____.

7.  Defendant officer or official acted pursuant to a custom or policy of defendant municipality, county or township, which custom or policy is the following: (*Leave blank if no custom or policy is alleged*):_____

_____

_____

_____.

8.  Plaintiff was charged with one or more crimes, specifically:

_____

_____

_____

_____

_____

9.  (*Place an X in the box that applies. If none applies, you may describe the criminal proceedings under "Other"*) The criminal proceedings

    ☐  are still pending.

    ☐  were terminated in favor of plaintiff in a manner indicating plaintiff was innocent.[1]

    ☐  Plaintiff was found guilty of one or more charges because defendant deprived me of a fair trial as follows_____

    _____.

    ☐ Other: _____.

    _N/A_____

[1]Examples of termination in favor of the plaintiff in a manner indicating plaintiff was innocent may include a judgment of not guilty, reversal of a conviction on direct appeal, expungement of the conviction, a voluntary dismissal (SOL) by the prosecutor, or a *nolle prosequi* order.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

10. Plaintiff further alleges as follows: (*Describe what happened that you believe supports your claims. To the extent possible, be specific as to your own actions and the actions of each defendant.*)

On or about october 19, 2023, Plantiff reported a racially offensive comment made by a employee in the workplace. Plantiff engaged in Protected activity by reporting conduct that constituted race discrimination. Shortly after making the report, Plantiff was terminated the same day. The timing of Plantiff's termination shows it was done in retaliation for making the Complaint. Defendants actions were discriminatory and retaliatory.

11. Defendant acted knowingly, intentionally, willfully and maliciously.

12. As a result of defendant's conduct, plaintiff was injured as follows:

Plantiff lost wages, lost employment, suffered emotional distress, and experienced financial hardship as a direct result of the retaliatory termination. Plantiff also suffered Stress and humiliation.

13. Plaintiff asks that the case be tried by a jury. ☑ Yes ☐ No

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

14. Plaintiff also claims violation of rights that may be protected by the laws of Illinois, such as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy, and/or any other claim that may be supported by the allegations of this complaint.

WHEREFORE, plaintiff asks for the following relief:

A. Damages to compensate for all bodily harm, emotional harm, pain and suffering, loss of income, loss of enjoyment of life, property damage and any other injuries inflicted by defendant;

B. ☒ *(Place X in box if you are seeking punitive damages.)* Punitive damages against the individual defendant; and

C. Such injunctive, declaratory, or other relief as may be appropriate, including attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

Plaintiff's signature: *Jonathan Mensah*

Plaintiff's name *(print clearly or type)*: Jonathan Mensah

Plaintiff's mailing address: 447 N Maggie lane

City Romeoville     State IL     ZIP 60446

Plaintiff's telephone number: (815) 302-8340 .

Plaintiff's email address *(if you prefer to be contacted by email)*:

MensahLLC24@gmail.com

15. Plaintiff has previously filed a case in this district. ☐ Yes ☑ No

*If yes, please list the cases below.*

*Any additional plaintiffs must sign the complaint and provide the same information as the first plaintiff. An additional signature page may be added.*

5

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Email: mensahllc24@gmail.com

EXHIBIT LIST
Plaintiff: Jonathan Mensah
Defendant: S&S; Activewear, LLC
Exhibit 1: Illinois Department of Human Rights Substantial Evidence Finding
(Race Retaliation – Plaintiff will attach the document)

**RECEIVED**

MAY 0 6 2025

**STATE OF ILLINOIS**    )
                        )  **ss**

**COUNTY OF COOK**    )                         **CHARGE NO. 2025CF0027**

**AFFIDAVIT OF SERVICE**

The undersigned served a copy of the attached **NOTICE OF SUBSTANTIAL EVIDENCE AND NOTICE OF DISMISSAL** on    April 28, 2025    , to each person named below by email or first class mail, addressed as follows:

---

### For Complainant

Kevin O'Connor
O'Connor O'Connor, P.C.
110 E. Schiller St.
Suite #212
Elmhurst, IL 60126

### For Respondent

Margaret R. Foss
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
155 N. Wacker Dr.
Suite #4300
Chicago, IL 60606

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

**PLEASE NOTE:**

The above-signed person is responsible only for <u>mailing</u> these documents. If you wish a review of the findings in this case, you must complete the Request for Review form attached. Department of Human Rights' staff are not permitted to discuss the investigation findings once a Notice of Determination has been issued.

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

IN THE MATTER OF:

JONATHAN MENSAH,                          )
                                          )
                                          )
                                          )
              COMPLAINANT,                )          CHARGE NO.      2025CF0027
                                          )          EEOC NO.        21BA41302
AND                                       )
                                          )
S & S ACTIVEWEAR, LLC,                    )
                                          )
                                          )
                                          )
                                          )
                                          )
              RESPONDENT.                 )

## NOTICE OF SUBSTANTIAL EVIDENCE AND NOTICE OF DISMISSAL

| For Complainant | For Respondent |
|---|---|
| Kevin O'Connor | Margaret R. Foss |
| O'Connor O'Connor, P.C. | Ogletree, Deakins, Nash, Smoak & |
| 110 E. Schiller St. | Stewart, P.C. |
| Suite #212 | 155 N. Wacker Dr. |
| Elmhurst, IL 60126 | Suite #4300 |
| | Chicago, IL 60606 |

DISMISSAL / NOTICE DATE: April 28, 2025

The Director of the DEPARTMENT OF HUMAN RIGHTS (Department) has entered the findings identified in the in the enclosed investigation report that the charge in this matter involves allegations of civil rights violations.

**SUBSTANTIAL EVIDENCE**

YOU ARE HEREBY NOTIFIED, the Director has concluded that there is **SUBSTANTIAL EVIDENCE** to support allegation(s) identified in the enclosed investigation report **(see investigation report)**.

**PROCEDURE:**

1. Complainant may request that the Department file a complaint with the Human Rights Commission (Commission) on the complainant's behalf:

   a. COMPLAINT REQUEST: Within thirty (30) days of receipt of this notice Complainant must notify the Department in writing if Complainant wishes the Department to file a complaint with the Commission pertaining to the allegation(s) identified as Substantial Evidence in the investigation report. A Complainant's written request should be sent to:
   Chief Legal Counsel
   Illinois Department of Human Rights
   555 West Monroe Street, 7th Floor
   Chicago, IL 60661.

**Page 2**
**Notice of Substantial Evidence and Notice of Dismissal**
**Charge No. 2025CF0027**

b. CONCILIATION: The Illinois Human Rights Act (Act) permits the Department to conduct conciliation as to those allegations in which substantial evidence has been found. This allows the parties an opportunity to settle the case before a complaint is filed with the Commission. Conciliation is a process in which a Department Staff Attorney facilitates settlement discussions with both parties.

c. MEDIATION: Complainant also has the opportunity to use the Department's mediation process to resolve the parties' differences. Mediation is a form of alternative dispute resolution. Both parties to a Department charge meet voluntarily in an informal atmosphere with a certified mediator to discuss voluntary settlement options to close the Department charge. All in-person mediation settlement conferences are held in the Department's Chicago office. Please contact the Department's Chief Legal Counsel if you are interested in resolving your case through mediation by calling (312) 814-6262.

d. NO SETTLEMENT: All settlement efforts are confidential and must be concluded within ninety (90) days of receipt of this notice. If the Department determines that there is not a reasonable possibility of settlement within ninety (90) days of receipt of this Notice, a complaint will be prepared against Respondent, filed with the Commission, and notice of such filing shall be served on all parties, pursuant to Section 7A-102(F) of the Act. It is then the parties' responsibility to proceed forward with the case at the Commission.

e. DISMISSAL: Conciliation of allegations with Substantial Evidence findings does not preclude your filing a Request for Review of the issues the Department dismissed, as described below (see dismissal).

OR

2. SELF FILE COMPLAINT: If the Complainant fails to timely request that the Department file the complaint, the Complainant may file a complaint with the Commission within ninety (90) days after receipt of this Notice. If Complainant files a complaint with the Commission, Complainant must also give notice of such filing to the Department.

OR

3. CIVIL ACTION: Commence a civil action in the appropriate state circuit court within ninety (90) days of receipt of this Notice. The civil action should be filed in the circuit court in the county in which the civil rights violation was allegedly committed.

## DISMISSAL

YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the Department has determined that there is a **LACK SUBSTANTIAL EVIDENCE** in support of the allegation(s) identified in the enclosed investigation report **(see investigation report).**

## PROCEDURE:

1. If Complainant disagrees with this action, Complainant may:

a. REQUEST FOR REVIEW: Seek review of this dismissal before the Illinois Human Rights Commission (Commission), by filing a "Request for Review" with the Commission by the request for review filing deadline date below. Respondent will be notified by the Commission if a Request for Review is filed. You can file the Request for Review by email, mail, personal delivery, or fax to:

**Page 3**
**Notice of Substantial Evidence and Notice of Dismissal**
**Charge No. 2025CF0027**

Illinois Human Rights Commission
Michael A. Bilandic Building
160 N. LaSalle Street, Suite N-1000
Chicago, IL 60601
Email: HRC.News@illinois.gov
Fax: (312) 814-6517

**REQUEST FOR REVIEW FILING DEADLINE DATE: August 1, 2025**

You may review or request a copy of your investigation file, after the Department's completion of the investigation, to help prepare your Request for Review. The Department will provide you with a specific date and time for you to review your investigation file. Files larger than fifty (50) pages will be sent to an outside vendor for copying. The Department is not responsible for the fees charged by the vendor. Call (312) 814 6262 to make arrangements.

**OR**

b. CIVIL ACTION: Commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. The civil action should be filed in the circuit court in the county where the civil rights violation was allegedly committed. If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately. The EEOC generally adopts the Department's findings. The Appellate Courts in Watkins v. Office of the State Public Defender, __ Ill. App. 3d __, 976 N.E.2d 387 (1st Dist. 2012) and Lynch v. Department of Transportation, __ Ill. App. 3d__, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Act against the State of Illinois in the Illinois Circuit Court are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

2. For Equal Employment Opportunity Commission **(EEOC) cross-filed charges ONLY**:

Complainant has the right to request that the EEOC perform a Substantial Weight Review (SWR) if:
   a. An EEOC charge number is cited above;
**AND**
   b. The charge alleges violations of federal laws enforced by the EEOC;
**AND**
   c. Complainant submits to EEOC a written and signed request for a Substantial Weight Review within fifteen (15) days of either:

   i. Receipt of this notice, if Complainant does NOT file a "Request for Review" with the Human Rights Commission (HRC);
**OR**
   ii. Receipt of the HRC's final notice/order if Complainant filed a "Request for Review" with the HRC. (This means that if you made a "Request for Review" with the HRC, you must wait to request a SWR from EEOC until after you receive notice of resolution of the HRC review, which may take many months up to a year or more).

**EEOC will not honor any request for a Substantial Weight Review that does not meet requirements (a), (b) and (c) above. If you have a pending "Request for Review" with HRC and you make a request for SWR with EEOC before you receive a final notice/order from the HRC, you will be asked to re-submit your request for SWR after you receive notice of resolution from the HRC.**

**Page 4**
**Notice of Substantial Evidence and Notice of Dismissal**
**Charge No. 2025CF0027**

If you choose to file a request for a Substantial Weight Review, and the allegation(s) occurred in one of the following counties: **Alexander, Bond, Calhoun, Clinton, Greene, Jackson, Jersey, Macoupin, Madison, Monroe, Perry, Pulaski, Randolph, St. Clair, Union, or Washington,** you may email your request for a Substantial Weight Review to, or mail it to:

> EEOC
> Attn: State, Local, and Tribal Programs Manager
> Robert A. Young Federal Building
> 1222 Spruce St., Rm 8.100,
> St. Louis, MO 63103.
> Email: Joseph.Wilson@eeoc.gov

For allegation(s) that occurred in **all other Illinois counties,** you may email your request for a Substantial Weight Review, or mail it to:

> EEOC
> Attn: State, Local, and Tribal Programs Manager
> John C. Kluczynski Federal Building
> 230 South Dearborn Street, Suite 1866
> Chicago, Illinois 60604.
> Email: chic-statelocal-unit@eeoc.gov

**PLEASE NOTE: The Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

DEPARTMENT OF HUMAN RIGHTS
James L. Bennett
Director

NOD SE-LSE Rev 04/04/2025

**STATE OF ILLINOIS**
**HUMAN RIGHTS COMMISSION**

IN THE MATTER OF:

JONATHAN MENSAH,                    )
                                    )
                                    )
                                    )
               COMPLAINANT,         )          CHARGE NO.    2025CF0027
                                    )          EEOC NO.      21BA41302
AND                                 )
                                    )
S & S ACTIVEWEAR, LLC,              )
                                    )
                                    )
                                    )
                                    )
                                    )
                                    )
               RESPONDENT.          )

## REQUEST FOR REVIEW FORM

| For Complainant | For Respondent |
|---|---|
| Kevin O'Connor | Margaret R. Foss |
| O'Connor O'Connor, P.C. | Ogletree, Deakins, Nash, Smoak & |
| 110 E. Schiller St. | Stewart, P.C. |
| Suite #212 | 155 N. Wacker Dr. |
| Elmhurst, IL 60126 | Suite #4300 |
| | Chicago, IL 60606 |

**TO:** JONATHAN MENSAH,

**DISMISSAL DATE: April 28, 2025**

**REQUEST FOR REVIEW FILING DEADLINE DATE: August 1, 2025**

⚠️ If you do not file a Request for Review by the filing deadline date, your case will be over. ⚠️

I am asking the Illinois Human Rights Commission (Commission) to review the dismissal of my charge by the Illinois Department of Human Rights (Department).

My Current Address (please print clearly):

Street Address_____ Apt/Unit #_

City_____ State_____ Zip_____

Email Address*_____ Phone Number (_____)_____
* If you provide an email address the Commission will send all future documents to you only by email. You should use an email address that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notices, or documents from other parties.

**Page 2**
**Request for Review**
**Charge No. 2025CF0027**

## How To Fill Out This Form

In the space below, you can explain why your charge should not have been dismissed. If you need more space, write on the back of this form or attach extra pages. You can include supporting materials and evidence with this Request for Review. The form, extra pages, and supporting materials and evidence must not be longer than **45 pages.**

You can look at the Department's investigation file to help you prepare your Request for Review. Call the Department at (312) 814-6262 to set up a time to look at the file. You will need to call at least 3 business days before you want to look at the file. Do not wait until the last minute to ask to look at the file.

_____

SIGNATURE                                                                    DATE

## How To File This Form

You must file the Request for Review **by the filing deadline date** on the first page of this form. You can file the Request for Review by email, mail, personal delivery, or fax to:

| | |
|---|---|
| Mail / Delivery: | Illinois Human Rights Commission |
| | Michael A. Bilandic Building |
| | 160 N. LaSalle Street, Suite N-1000 |
| | Chicago, IL 60601 |
| Email: | HRC.News@illinois.gov |
| Fax: | (312) 814-6517 |

After you file your Request for Review, you **cannot** give the Commission more information or supporting materials. If you need more time to complete your Request for Review, you can file a motion for extension of time. You must file your motion by the filing deadline date on the first page of this form.

For more information about how to fill out and file this form, go to the Commission's website at hrc.illinois.gov/rules/request-for-review.

HB1509/HB59 HRC R/R 10/10/2023

Michael A. Bilandic Building, 160 North LaSalle Street, Suite N-1000
Chicago, Illinois 60601 Phone (312) 814-6269
TTY (866) 832-2298 Fax (312) 814-6517

Jefferson Terrace, 300 West Jefferson Street, Suite 108
Springfield, Illinois 62702 Phone (217) 785-4350
TTY (866) 832-2298 Fax (217) 524-4877

# STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
### INVESTIGATION REPORT

**Complainant:** JONATHAN MENSAH          **IDHR No.:**   2025CF0027
**Respondent:** S & S ACTIVEWEAR, LLC[1]          **EEOC No.:**   21BA41302

**Investigator:** ADD          **Supervisor:** MQL/*MML*          **Date:** April 8, 2025

**Issue/Basis:**                              **Finding:**

A.   Harassment/Race, black          A.   Lack of Substantial Evidence
B.   Discharge, Race, black          B.   Lack of Substantial Evidence
C.   Discharge/Retaliation          C.   Substantial Evidence

**Jurisdiction:**

Alleged violations:          A.     October 19, 2023[2]
                             B-C.   October 20, 2023[3]

Charge filed:          July 19, 2024
Charge perfected:          July 19, 2024
Amendments:          N/A
Number of employees:          500

**Employment Data:**

Based on information provided by Respondent during the Department's Fact-Finding Conference, Respondent has approximately 500 employees at the work site at issue and there are about fifteen to seventeen employees in Complainant's section. Respondent maintains that personnel assigned to its facility on a temporary basis are not employees. The Department construed Respondent to have been a joint employer of Complainant because Complainant's work activities took place at Respondent's facilities, he used Respondent-issued materials and equipment to engage in his duties, and his work activities were determined and directed by Respondent's personnel.

**Uncontested Facts:**

1.     Respondent is a clothing distributor.

2.     On September 27, 2023, Complainant began working at Respondent as a Decanter.

---

[1] The charge indicates Respondent's name as "S & S Warehouse." However, Respondent's documents responsive to the charge indicate that Respondent's proper legal name is S & S Activewear, LLC.

[2] In the charge, Complainant stated that the offensive incident construed as harassment occurred on October 11, 2023, that he complained of the incident two days later on October 13, 2023, and that he was discharged that same day (October 13, 2023). During the Department's investigation, Complainant stated that the offensive incident occurred on October 19, 2023, that he complained of the incident that same day, and that he was discharged the next day, October 20, 2023.

[3] Ibid.

3. Kelly Services, an employment placement agency, placed Complainant at Respondent.

4. Respondent dismissed Complainant early on October 19, 2023.

5. Complainant's last day at Respondent was October 19, 2023.

6. There were about 15-20 Decanters at the work site at issue around the time that Complainant was assigned to Respondent.

**Complainant's Allegations-Count A:**

Complainant, a former Decanter for Respondent, alleges he was subjected to harassment based on his race, black, when a coworker made a racially discriminatory joke about black people on October 19, 2023. Complainant maintains that he found the conduct unwelcomed and unwanted, that he complained of the conduct the same day it occurred, and that the conduct created a race-based hostile work environment which substantially interfered with his ability to perform his job duties.

**Respondent's Defenses-Count A:**

Respondent denies that it subjected Complainant to a race-based hostile work environment. Respondent contends that during his time at Respondent from September 27, 2023, to October 19, 2023. Complainant never reported any harassment based on race, black to Respondent. Respondent further contends that Respondent did not employ Complainant, but rather he was placed as a temporary worker at Respondent.

**Investigation Summary-Count A:**

A. **Complainant's Evidence.**

1. Complainant stated that he began working at Respondent as a Decanter on September 27, 2023, when he was sent there by Kelly Services, a temporary employment agency. Respondent's copy of its job description for "PopPick Decanter (**Exhibit A**) indicates such duties as "prepares inventory for putaway into automated picking system" and "inspects products for defects and damages," among other duties. Complainant stated that he was hired by Jose Morfin ("Morfin") (non-black), Respondent's Operations Manager. Complainant stated that when Kelly Services placed him at Respondent, he identified his race, black on the application.

2. Complainant stated that he worked full time at Respondent's Lockport, Illinois location. Complainant stated that his performance met Respondent's expectations.

3. Complainant stated that his job duties consisted of decanting, packing clothes, and placing them in baskets to send down the conveyor belt.

Charge No. 2025CF0027
Page 3 of 11

Complainant stated that Respondent provided him with the work equipment needed to perform his duties.

4. Complainant stated that Respondent's personnel supervised and directed his work activities; more specifically Alex (last name unknown) (non-black) and Ken (last name unknown) (non-black). Complainant stated that both Ken and Alex worked for Respondent, as opposed to Kelly Services.

5. Complainant stated that he was not aware of Respondent's antidiscrimination policy. Complainant stated that he figured that discrimination or harassment should be reported to a supervisor at Respondent.

6. Complainant stated he was not aware of and was not informed of Respondent's antiretaliation policy.

7. Complainant stated he was not aware of and was not informed of Respondent's discharge policy.

8. Complainant stated he was not aware of and was not informed of Respondent's discipline policy.

9. Complainant stated that on October 19, 2023, a few hours into the day, a co-worker, Zach (last name unknown) (non-black), made a comment to him that "They [Respondent] put black employees in the back to break down boxes like Rosa Parks."

10. Complainant stated that he and another co-worker Amari[4] (last name unknown) (black), heard Zach make the comment, but did not immediately report it to Respondent.

11. Complainant stated that there was always joking, specifically from Zach. Complainant stated that he told Zach to stop with the jokes when he made the joke invoking Rosa Parks. Complainant stated that there were no other racially offensive jokes or slurs.

12. Complainant stated that he reported Zach towards the end of his shift on October 19, 2023. Complainant stated that he made the report verbally to Alex, and Ken, as well as to another Supervisor, Jose (last name unknown) (non-black). Complainant stated that Ken and Alex told him that they would "take care of it." Complainant stated he is not aware if Respondent investigated the complaint or spoke to Zach. Complainant stated that when he made the compliant, Ken went to get a woman in a red vest and the woman approached him and told him to go home and to come back

---

[4] At the time of the Complainant Interview, Department Staff asked Complainant to provide contact information for Amari (witness). Complainant never provided contact information for the witness mentioned during the Interview

tomorrow. Complainant stated that Respondent did not give him a reason for sending him home.

13. Complainant stated that after the woman in the red vest told him to go home, he went to Morfin and complained about the discriminatory joke. Complainant stated that Morfin advised that he would take care of it, and he (Morfin) checked his (Complainant's) job performance for the day. Complainant stated that Morfin told him he was doing well. Complainant stated that he told Morfin that he was being sent home and Morfin told him to go home.

## B. Respondent's Evidence.

1. Cynthia Mendez ("Mendez") (non-black), Human Resources Generalist, stated that Respondent uses Kelly Services for their supplemental staffing needs. Mendez stated that she does not know the number of employees at Respondent during Complainant's assignment in fall 2023. Mendez stated that none of the employees assigned from Kelly Services served in a supervisory or managerial capacity. Respondent's EEO information regarding Decanters assigned to Respondent at its Lockport location by Kelly Services **(Exhibit B)** shows that sixty-six (66) employees were assigned from Kelly Services in 2023, and of those sixty-six employees 38 were black, 11 were Hispanic, and 13 were white. The document further indicates that of the terminated Decanters, 36 were black, 10 were Hispanic, and nine (9) were white. The document further indicates that of the Decanters who remain active at Respondent, five (5) were black, six (6) were Hispanic, and six (6) were white.

2. Mendez stated that Respondent does have an antidiscrimination and antiretaliation policies **(Exhibit C)** and that employees are provided information at the time of onboarding, but that Respondent's expectation is that Kelly Services provides the policies to their employees.

3. Mendez stated that she does not have any knowledge of a report of discrimination made by Complainant.

4. Morfin stated that he does not recall the conversation with Complainant about discrimination that Complainant's maintains occurred.

5. Mendez stated that if an employee reports discrimination the first step is to make an incident report and then it is given to her so that Human Resources can initiate an investigation.

6. Mendez stated that Respondent never initiated an investigation because it never received a report of harassment based on race, black from either Complainant or Kelly Services on or around October 19, 2023. Mendez

Charge No. 2025CF0027
Page 5 of 11

stated that Complainant's assignment was ended following the October 19, 2023, shift because Complainant refused a directive.

### C. Complainant's Rebuttal.

1. Complainant did not provide any additional information other than what was previously identified in Complainant's section.

### Analysis-Count A:

Complainant's allegation of race-based harassment consists of a singular incident in which a co-worker mentioned black employees working in the back of Respondent's facility and referencing Rosa Parks, the civil rights leader who refused to be segregated and relegated to the back of the bus. The alleged incident, if it occurred, was an isolated event which was not of sufficient severity on its own, nor pervasive (a repeated barrage of discriminatory conduct). The Illinois Human Rights Commission has noted, for example, that for race harassment specifically, "the law requires more than a few isolated incidents of harassment to occur; racial comments that are merely part of casual conversation, are accidental, or are sporadic do not trigger civil rights protective measures" (the Commission's Order regarding Charge No. 2018CF0571 dated July 30, 2019). Furthermore, Complainant does not allege that any racially derogatory or offensive words were uttered after he made his alleged complaint about the incident.

### Findings and Conclusion-Count A:

A finding of **Lack of Substantial Evidence** is recommended because:

Complainant's allegation of a singular offensive racial epithet or joke is insufficient to rise to the level of actionable harassment. Complainant does not allege that there were any further incidents following the one at issue. As the incident was isolated and there were no further incidents in which racially offensive utterances were made, there is no substantial evidence that Respondent subjected Complainant to race-based harassment.

### Complainant's Allegations-Count B:

Complainant alleges that on or about October 20, 2023, Respondent (through Kelly Services) discharged him due to his race, black. Complainant alleges that Respondent was aware of his race. Complainant maintains that his job performance was satisfactory. Complainant maintains that under similar circumstances, Respondent did not discharge similarly situated non-black personnel.

### Respondent's Defenses-Count B:

Respondent's articulated non-discriminatory reason for Complainant's temporary assignment ending on October 20, 2023, is insubordination, when Complainant refused to follow the directives of a manager. Respondent admits that Complainant's race is black. Respondent denies that Complainant's job performance was satisfactory insofar as he refused a directive. Respondent denies that it treated any alleged similarly situated employee to Complainant more favorably under similar circumstances.

Charge No. 2025CF0027
Page 6 of 11

## Investigation Summary-Count B:

**A.** **Complainant's Evidence.**

1. See Complainant's Evidence – Count A.

2. Complainant stated that on October 20, 2023, he received a message from Kelly Services telling him not to return to Respondent because he had been terminated. Complainant stated he then phoned Kelly Services to ask why he was being discharged. Complainant stated that a Kelly Services employee told him there was no reason for his discharge. Complainant stated that he informed Kelly Services that Respondent was very discriminatory, but he did not mention the "joke" made by Zach or that he made a complaint of discrimination.

3. Complainant stated that Kelly Services told him that it would try and find another job placement opportunity for him.

4. Complainant stated that he feels his race was a factor in his discharge because Respondent discharged him after he reported Zach for making a "joke" about black people. Complainant stated that his race was the reason because his performance was good and he was always on time.

5. Complainant stated that he is not aware of other Decanters who were discharged under similar circumstances. Complainant stated he is not aware of other Decanters who were not discharged under similar circumstances.

**B.** **Respondent's Evidence.**

1. See Respondent's Evidence – Count A.

2. Morfin stated that he does not remember why Respondent asked Complainant to leave early on October 19, 2023. Morfin stated he does not remember what happened on October 19, 2023, as it was over a year ago and Respondent is a fast-paced work environment with temporary employees "coming and going."

3. Morfin stated that employees who wear a red vest at Respondent belong to the management team. Morfin stated that Complainant's assertion that someone in a red vest advised him to leave would make sense as management personnel may send people home if necessary.

4. Mendez stated that Respondent does have a discharge policy and it is provided at the time of discharge, but that it is Respondent's expectation is that Kelly Services provides the policy to its employees.

5. Mendez stated that if Respondent asks an employee placed from Kelly Services to be reassigned, she will send Kelly Services an email or make a phone call and ask for the employee to be reassigned. Mendez stated that reassignment means ending an employee's assignment at Respondent. Mendez stated that reasons to have an employee reassigned include insubordination, attendance issues, and violation of Respondent's policies.

6. Mendez stated that Respondent has a discipline policy. Mendez stated that depending on the violation (i.e. attendance or performance), the policy is progressive. Mendez stated that if an employee from Kelly Services, there is a point system and Respondent's supervisor, or manager provide the discipline.

7. Mendez stated that if Respondent asks an employee placed by Kelly Services to leave early, it sends an email to Kelly Services informing them the employee was asked to leave and provides the reason.

8. Mendez stated that on October 19, 2023, at 5:21 p.m. she sent Kelly Services an email (Exhibit D) informing them that Complainant had been sent home by Respondent's Operations Manager for refusing a directive from a manager and asked Kelly Services to end his assignment immediately due to insubordination. Mendez stated that Respondent has ended the assignments of temporarily assigned employees of various racial or ethnic backgrounds and continues to employ personnel of various racial or ethnic backgrounds.

9. Respondent's EEO information regarding Decanters assigned to Respondent at its Lockport location by Kelly Services (Exhibit B) shows that sixty-six (66) employees were assigned from Kelly Services in 2023, and of those sixty-six employees 38 were black, 11 were Hispanic, and 13 were white. The document further indicates that of the terminated Decanters, 36 were black, 10 were Hispanic, and nine (9) were white. The document further indicates that of the Decanters who remain active at Respondent, five (5) were black, six (6) were Hispanic, and six (6) were white.

## C. Complainant's Rebuttal.

1. Complainant did not provide any additional information other than what was previously identified in Complainant's section.

## Analysis-Count B:

There is no evidence that Respondent discharged Complainant due to his race. There is no evidence that a similarly situated non-black Decanter was treated more favorably than Complainant under similar circumstances. Respondent maintains that it ended Complainant's assignment due to an incident on October 19, 2023, wherein Complainant refused a directive from a manager,

Charge No. 2025CF0027
Page 8 of 11

Complainant maintains that he was given no reason for the discharge by Respondent or Kelly Services. Respondent's copy of its October 19, 2023, email to Kelly Services indicates that Respondent advised Kelly Services of its conclusion that Complainant had refused a directive. Even if Respondent was in error, Complainant has not shown that the decision makers harbored an animus against him due to his race. Complainant alleges, and Respondent denies, that he complained of a racial joke on October 19, 2023, and was subsequently discharged, which is addressed as Count C later in this report. Complainant has not named a similarly situated comparator who was treated more favorably under similar circumstances. The evidence further indicates that Respondent has hired and discharged Decanters who were black and non-black and has continued to employ Decanters who are black and non-black.

## Findings and Conclusion-Count B:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that Respondent dismissed Complainant citing his alleged failure to follow a manager's directive. Complainant could not provide any comparators who were non-black and who were treated more favorably similar circumstances. Respondent has also discharged non-black Decanters and has continued to employ black and non-black Decanters. There is no evidence of animus based on race, black. There is no substantial evidence that Respondent discharged Complainant because of his race.

## Complainant's Allegations-Count C:

Complainant, a former Decanter, alleges that Respondent discharged him on October 20, 2023, in retaliation for his having engaged in the protected activity of complaining of race-based discrimination on the prior day. Complainant alleges that on October 19, 2023, he engaged in a protected activity when he reported harassment based on race, black when a co-worker made a racially discriminatory "joke" about black people. Complainant maintains that he was discharged the following day on October 20, 2023, on the heels of his complaint, thereby raising an inference of retaliatory motive.

## Respondent's Defenses-Count C:

Respondent's articulated non-discriminatory reason for Complainant's end of assignment on October 20, 2023, is that Complainant refused to follow the directives of a manager. Respondent denies that Complainant lodged any complaint while assigned at Respondent. Respondent denies any causal nexus between any alleged protected activity in which he engaged and the ending of his assignment.

## Investigation Summary-Count C:

A. **Complainant's Evidence.**

1. See Complainant's Evidence – Counts A & B.

2. Complainant stated that following his October 20, 2023, conversation with a Kelly Services representative, wherein he was not given any reason for the end of his assignment, he concluded that Respondent discharged him in retaliation for making a report of discriminatory harassment because of his race, black.

B. **Respondent's Evidence.**

1. See Respondent's Evidence – Counts A & B.

2. Mendez stated that she does not have any knowledge of a report of discrimination made by Complainant.

3. Morfin stated that he does not recall the conversation with Complainant about discrimination that Complainant's maintains occurred wherein he raised a concern about a racial joke or race discrimination.

4. Mendez stated that if an employee reports discrimination the first step is to make an incident report and then it is given to her so that Human Resources can initiate an investigation.

5. Mendez stated that Respondent never initiated an investigation because it never received a report of harassment or discrimination from either Complainant or Kelly Services on or around October 19, 2023. Mendez stated that Complainant's assignment was ended near the end of the October 19, 2023, shift because Complainant refused a directive.

C. **Complainant's Rebuttal.**

1. Complainant stated that neither Kelly Services nor Respondent provided him with a reason for the discharge. Complainant stated that when the manager at Respondent in the red vest told him to go home for the day on October 19, 2023, she did not give him any reason for the directive, and he had no knowledge that he had allegedly refused a directive.

## Analysis-Count C:

Complainant maintains, and Respondent denies, that Complainant complained of racially offensive conduct on October 19, 2023. Complainant maintains that he was sent home early on that date and that on the next day, October 20, 2023, a Kelly Services employee advised him that Respondent had ended his assignment, effectively discharging him. Respondent maintains that Complainant did not lodge any sort of discrimination or harassment complaint, or any complaint wherein he alleged a racially offensive incident, during his assignment at Respondent. Respondent maintains that it ended Complainant's assignment because Complainant refused a directive, as indicated in its email to Kelly Services on October 19, 2023, with Complainant denying that he refused a directive.

Charge No. 2025CF0027
Page 10 of 11

## Findings and Conclusion-Count C:

A finding of **Substantial Evidence** is recommended because:

The parties disagree as to whether Complainant engaged in the protected activity of complaining of racial discrimination on or about October 19, 2023, with Complainant maintaining that he did so and Respondent denying this. Complainant may have established a *prima facie* case of retaliation insofar as he maintains that he complained of race-based discrimination, that he was subjected to an adverse action (end of assignment amounting to discharge), and that the adverse action shortly followed the protected activity so as to raise an inference of retaliatory motive. The current Count depends at least in part on whether one believes Complainant regarding his engagement in a protected activity or whether one believes Respondent's contention that Complainant did not engage in a protected activity. The Department is barred from making credibility determinations. As such, a finding of Substantial Evidence is recommended so that further proceedings may take place before a trier of fact.

## Witness List:

For Complainant:
KEVIN O'CONNOR
O'CONNOR O'CONNOR, P.C.
110 E. SCHILLER ST. STE. 212
ELMHURST, IL 60126
Email: kevinoconnoroconnor.com

For Respondent:
MARGARET R. FOSS
OGLETREE DEAKINS
155 N. WACKER DRIVE, SUITE 4300
CHICAGO, IL 60606
Email: margaret.foss@ogletreedeakins.com

A.  Jonathan Mensah, Decanter (black)          (CPI & FFC)
    C/o Kevin O'Connor
    O'Connor O'Connor, P.C.
    110 E. Schiller Street, Suite 212
    Elmhurst, IL 60126
    630-903-6397

B.  Cynthia Mendez, HR Generalist (non-black)   (FFC)
    C/o Margaret R. Foss
    Ogletree Deakins
    155 N. Wacker Dr., Suite 4300
    Chicago, IL 60606
    312-558-3149

C.  Jose Morfin, Operations Manager (Non-black)  (FFC)
    C/o Margaret R. Foss
    Ogletree Deakins
    155 N. Wacker Dr., Suite 4300
    Chicago, IL 60606
    312-558-3149

**Charge No. 2025CF0027**
**Page 11 of 11**

## Exhibits:

A.     Respondent's Decanter Job Description

B.     Respondent's EEO information regarding Decanters Assigned to Respondent at their Lockport location by Kelly Services

C.     Respondent's antidiscrimination and antiretaliation policy.

D.     Respondent's October 19, 2023, Email sent by Respondent to Kelly Services informing of Complainant's insubordination and asking to not have him assigned at Respondent

IRSHELL
Rev. 11/2021